UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEAZAR G. DUARTE,<br><br>                              Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                              Defendant. | Case No.:  16CV2654 W (BGS)<br><br>**REPORT AND<br>RECOMMENDATION:**<br>  **(1)GRANTING PLAINTIFF'S<br>    MOTION FOR SUMMARY<br>    JUDGMENT [ECF No. 15] AND<br>  (2) DENYING DEFENDANT'S<br>    CROSS-MOTION FOR<br>    SUMMARY JUDGMENT [ECF<br>    No. 17]** |

On October 26, 2016, Plaintiff Eleazar G. Duarte filed a Complaint seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") denial of disability insurance benefits and supplemental social security income under Titles II and XVI the Social Security Act. (ECF No. 1.) On February 13, 2017, Defendant filed her Answer and the Administrative Record and the Court issued a briefing schedule.  (ECF Nos. 11-13.)  Following an Order to Show Cause, (ECF 16), on April 13, 2017, Plaintiff filed a Motion for Summary Judgment seeking reversal of the final decision denying benefits and payment of benefits, in the alternative, a remand for further administrative proceedings.  (Pl.'s Mot. for

Summary Judgment [EFC No. 15] ("Mot.").)  Plaintiff argues the Administrative Law Judge ("ALJ") committed reversible error in rejecting Plaintiff's testimony regarding his symptoms based on credibility. (*Id.* at 3.)

Following another Order to Show Cause, (ECF 16), on May 12, 2017, Defendant filed a Cross Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment.  (ECF Nos. 17-18.)  Defendant argues that the ALJ's decision was supported by substantial evidence, is free from legal error, and should be affirmed.  (Def.'s Cross Mot. for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. (Opp'n at 9.)

The Honorable Thomas J. Whelan has referred this matter to Magistrate Judge Bernard G. Skomal on a report and recommendation basis.  Pursuant to Civ. L.R. 7.1(d)(1), the Court finds the parties' cross-motions suitable for decision on the papers and without oral argument.  After careful consideration of the parties' arguments, the administrative record and the applicable law and for the reasons discussed below, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **GRANTED**, Defendant's Cross Motion for Summary Judgment be **DENIED**, and that the matter be remanded to the agency for further proceedings.

# I.     PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental social security income in September 2010 that were denied.  (AR 180-186, 105-111.)  Plaintiff requested a hearing before an ALJ on May 13, 2011. (AR 124.)  A hearing was held on November 6, 2012.  (AR 59-92.)  Plaintiff was represented by counsel and testified at the hearing along with a vocational expert.  (*Id.*)  On November 20, 2012, the ALJ issued a decision finding Plaintiff was not disabled and denied Plaintiff's applications for benefits. (AR 38-51.)  On January 24, 2013, Plaintiff requested review of the decision by the Appeals Council.  (AR 23-27.)  On August 22, 2016, the Appeals Council denied

Plaintiff's request for review.[1]  (AR 1-3.)

## II.  SUMMARY AND ANALYSIS OF THE ALJ DECISION

The Court only briefly notes the ALJ's five-step analysis because the issues raised in this case concern only the ALJ's credibility findings.  Relevant portions of the decision and Administrative Record are discussed in more depth below in analyzing the particular issues raised by Plaintiff.

The ALJ's decision goes through each potentially dispositive step of the familiar five-step evaluation process for determining whether an individual has established his or her eligibility for disability benefits.[2]  (AR 39-50.); *see Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724-25 (9th Cir. 2011); *see* 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ determined that Plaintiff had not engaged in substantial

---

[1] Neither party explains this delay from the January 2013 request for review by the Appeals Council to the August 2016 denial by the Appeals Council.  Although it does not impact this Court's decision, the Court notes that it appears from the record that the Social Security Administration may not have received attachments to the request for review that were referenced in the request.  (AR 13-14 (September 10, 2015 letter from Social Security Administration referencing a missing attachment).)  It also appears the Social Security Administration might have only been prompted to inquire about the missing attachment by an August 27, 2015 letter from Plaintiff's counsel checking on the status of the request for review.  (AR 28-31.)

[2] In order to qualify for disability benefits, an applicant must show that: (1) he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A).  An applicant must meet both requirements to be "disabled."  *Id.*  The applicant has the burden to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant bears the burden of proving he is disabled.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  But, at step five, discussed below, the Commissioner bears the burden of showing the claimant can do other kinds of work that exist in significant numbers in the national economy "taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id.*

gainful activity since March 29, 2001.[3]  At step two, the ALJ found Plaintiff had the following severe impairments: lumbar spine spondylosis, lumbar spine degenerative disc disease; diabetes mellitus; hypertension; generalized anxiety disorder; and major depressive disorder.  (AR 40).  At step three the ALJ considers whether the claimant's impairments "meet or equal" one or more of the specific impairments or combination of impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, the listings.  *See* §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(d), 404.1525, 404.1526, 416.925, 416.926.  Here, the ALJ found Plaintiff's impairments did not meet a listing. (AR 40-42.)

If the claimant does not meet a listing, the ALJ "assess[es] and makes a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record."  20 C.F.R. §§ 404.1520(e), 416.920(e).  A claimant's residual functional capacity ("RFC") is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c).  The RFC is used at the fourth and fifth steps to determine whether the claimant can do their past work (step four) or adjust to other available work (step five).  *Id.*

Here, the ALJ found the following RFC for Plaintiff:

The undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: no more than occasional pushing and pulling with the left lower extremity; no more than occasional stooping and climbing ladders, ropes, and scaffolding; no more than frequent kneeling, crouching, crawling, balancing, and climbing ramps and stairs; avoid concentrated exposure to workplace hazards; allowed to use a cane as needed for prolonged ambulation; precluded from performing complex and detailed work activity, but remains capable of performing unskilled labor; no interaction with the public; no more than frequent interaction

---

[3] Based on the Administrative Record, particularly testimony before the ALJ, it appears that Plaintiff was receiving benefits until sometime in 2007 when his benefits were ceased.  That action was the subject of a different proceeding.  This proceeding concerns Plaintiff's request for benefits following that time period.  (AR 63, 72-74.)

with coworkers and supervisors; and no more than occasional changed in workplace setting and decision making required on the job.

(AR 42.)

At step four, the ALJ found Plaintiff could not do his past work. (AR 49 (finding "the demands of [Plaintiff's] past relevant work, [fruit farm worker], exceed the residual functional capacity.").)

At step five, the ALJ considers whether the claimant can do other work, taking into account the claimant's age, education, work experience, and the limitations in the RFC. 20 C.F.R. §§ 404.1520(a)(v). If the claimant can do other available work, then the claimant is found not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(g); *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). Here, the ALJ heard and relied on testimony from a vocational expert that work existed in significant numbers in the national economy for a person of Plaintiff's age, education, work experience, and subject to the RFC found by the ALJ. (AR 50.)

As discussed more fully below, the ALJ found the Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms . . . not credible to the extent they [were] inconsistent with the above" RFC. (AR 44.) Although, as discussed below, the ALJ's decision does not identify which of Plaintiff's claims regarding his symptoms are being rejected and excluded from the RFC, the ALJ has rejected some of Plaintiff's allegations as to his symptoms based on credibility. It is this credibility assessment and the ALJ's basis for it that Plaintiff challenges.

## III.   Scope of Review

Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial review of a final agency decision. 42 U.S.C. § 405(g). This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision. *See id.*; 20 C.F.R. § 404.900(a)(5). The matter may also be remanded to the Social Security Administration for further proceedings. 42 U.S.C. § 405(g).

If the Court determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted). The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## IV. DISCUSSION

Plaintiff raises numerous challenges to the ALJ's rejection of Plaintiff's testimony based on credibility. The Motion does not identify what testimony by Plaintiff the ALJ is alleged to have improperly rejected,[4] however, this is understandable because the ALJ fails to identify what particular testimony he is discounting based on his credibility assessment. The ALJ summarizes Plaintiff's testimony as follows:

> At the hearing, the claimant alleged that he was unable to work due to low back pain, radiculopathy, diabetes, and high blood pressure. The claimant alleged an inability to lift more than 10 pounds, stand for longer than 10 minutes, or walk for more than 50 feet. He states that he used a cane when walking and standing.
>
> The claimant also alleged depression and anxiety, as well as nightmares. He claimed that he talked to deceased relatives in his sleep. He alleged difficulties dealing with crowds and the public. He indicated he could occasionally interact with co-workers, but alleged he would be unable to interact with supervisors.
>
> [In reference to the *Adult Function Report*, the ALJ also indicated] [t]he claimant alleged difficulties with lifting, squatting, bending, reaching, sitting, and kneeling. He also alleged that he did not go outside or engage

---

[4] Plaintiff's Motion states "Mr. Duarte testified about the nature and extent of her [sic] condition." It then cites the entire transcript of the hearing before the ALJ, (AR 59-92). Plaintiff's testimony is on pages 70-72, 75-85, 89, and 91.

in social activities. However, he admitted he had no problems caring for his personal hygiene, preparing himself simple meals, taking out the trash, and grocery shopping with his wife. He reported seeing a psychologist weekly for treatment.

(AR 43 (internal citations omitted).)

As discussed more fully below, the ALJ's decision does not identify what portions of this testimony concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms the ALJ is rejecting, but it provides a broad view of the symptom testimony that the ALJ rejected, at least in part, based on credibility.

## A. Credibility

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

An ALJ must engage in a two-step analysis when evaluating the credibility of a claimant's testimony regarding subjective pain and impairments. *Garrison*, 759 F.3d at 1014 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citations omitted). "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell*, 947 F.2d 341, 343 (9th Cir. 1991)). Second, "[i]f the claimant satisfies the first step of this analysis, and there is no evidence of malingering,[5] the ALJ can reject the claimant's testimony about

---

[5] The ALJ notes the possibility that Plaintiff might be reporting an increase in his mental health symptoms to bolster his disability claim because Plaintiff reported feeling depressed since his benefits ceased. However, neither party suggests, and the decision

the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*at 1014-15; *see also Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). These reasons must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chatter*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints.").

The ALJ may consider at least the following when assessing a claimant's credibility: (1) reputation for truthfulness; (2) inconsistencies in either the claimant's testimony or between claimant's testimony and conduct; (3) daily activities; (4) work records; and (5) testimony from physicians and third parties concerning the nature, severity and effect of claimant's condition. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c). "If the ALJ's credibility finding is supported by substantial evidence in the record, [then a reviewing court] may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Plaintiff has satisfied the first step. The ALJ found "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (AR 44.) Accordingly, the Court finds the first step satisfied. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) ("[T]he claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has

---

does not reflect, the ALJ made "a finding of malingering based on affirmative evidence thereof." *Robbins*, 466 F.3d at 883.

alleged; she need only show that it could reasonably have caused some degree of the symptom.")

The issues Plaintiff raises in his Motion fall under the second step, *i.e.* whether the ALJ provided "specific, clear, and convincing reasons" for rejecting Plaintiff's testimony as to the severity of his symptoms.

### 1. Boilerplate Language

Plaintiff challenges the following language in the decision:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable  impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's and his wife's statements concerning the intensity, persistence, and limiting effects of the symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 44.)

Plaintiff argues that the ALJ erred in relying on this boilerplate language because in addition to being boilerplate language, it also indicates the ALJ arrived at an RFC and then used the RFC to reject Plaintiff's testimony. (Mot. at 6, 12.)

"ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination." *Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d at 1103 (citations omitted). "After making this boilerplate statement, the ALJs typically identify what parts of the claimants testimony were not credible and why." *Id.* (citations omitted). Here, the boilerplate language follows the ALJ's reasons for finding Plaintiff's allegations less than credible. The Court finds the inclusion of the boilerplate language itself is not in error. The issue, as discussed more fully below, is whether the ALJ provided specific, clear, and convincing reasons for his credibility determinations.

Similarly, Plaintiff argues that the ALJ's assertion, that Plaintiff's statements "are not credible to the extent they are inconsistent with the above residual functional capacity assessment," reflects that the ALJ first determined Plaintiff's ability to work and then used that assessment to reject Plaintiff's credibility. (Mot. at 12.) The Court agrees that actually

proceeding with the analysis that way would be in error, and stating it this way implies it may have been improperly done this way. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (It "implies that ability to work is determined first and is then used to determine the claimant's credibility" when the ALJ should be determining which testimony is and is not credible for purpose of arriving at an RFC.")  However, as with the boilerplate language above, the issue is not necessarily that it is poorly stated this way, but rather, whether the analysis proceeded this way. The ultimate issue is still whether the ALJ provided specific, clear, and convincing reasons for his credibility determinations.

## 2. Daily Activities

In making his adverse credibility finding based on Plaintiff's daily activities, the ALJ found as follows:

> Despite his impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction.  The claimant admitted activities of daily living including caring for his personal hygiene, preparing simple meals, completing basic household chores, grocery shopping, and visiting with his family (Ex. B5E, pp.2-3 & B4E, p. 5). Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment.  The undersigned finds the claimant's ability to participate in such activities diminishes the credibility of the claimant's allegations of functional limitations.

(AR 44.)

An "ALJ [is] permitted to consider daily living activities in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Daily activities "form the basis for an adverse credibility determination" when: (1) the daily activities contradict the claimant's other testimony or (2) the daily activities meet the threshold for transferable work skills.  *Orn*, 495 F.3d at 639; *see also Molina*, 674 F.3d at 1112-13 (listing factors to consider in evaluating a claimant's testimony, including "whether the claimant engages in daily activities inconsistent with the alleged symptoms" and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting").  Neither of these bases is supported by the ALJ's

decision. The Court first considers whether the ALJ erred in finding Plaintiff's daily activities met the threshold for transferable work skills because it appears that was the basis for the ALJ's credibility finding.

"Daily activities may . . . be 'grounds for an adverse credibility finding if a claimant is able to spend a *substantial part of his day* engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Ghanim*, 763 F3d at 1165 (quoting *Orn*, 495 F.3d at 639) (emphasis added). However, the "ALJ must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn* at 639 (quoting *Burch*, 400 F.3d at 681).

The ALJ does not make any specific findings as to how the activities Plaintiff describes could transfer to a work setting. Nor does the record reflect Plaintiff could do any of the activities identified for a substantial part of his day. After listing the activities, the decision states, "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (AR 44.) However, the portion of the record he relies on does not support his conclusion. When the Court looks to Plaintiff's *Adult Function Report* and his wife's *Third Party Function Report* that the ALJ cites as a basis for the daily activities listed, the conclusion is perplexing. As to preparing simple meals, "a couple of times a week I make my own sandwich." (AR 231.) As to completing basic household chores, "only to help my wife when she tells me with the trash . . . about 10 minutes one or two days a week" and his wife reports "he does not go out unless I manage to get him to help me carry garbage can to the curb." (AR 224, 231.) As to grocery shopping, "about every other week I try to go to the grocery with my wife." (AR 232.) As to visiting family, Plaintiff reports "sometimes I go with my wife or stay with my mother" and his wife reports maybe twice a month they visit family (Plaintiff's mother or their daughter). (AR 225, 233.) "[T]here is no indication here that the limited activities [Plaintiff] engaged in, often with the help of [his wife] either comprised a

'substantial' portion of [Plaintiff's] day, or were 'transferrable' to a work environment." *Ghanim*, 763 F.3d at 1165 (citing *Orn*, 495 F.3d at 639 and *Smolen*, 80 F.3d at 1284 n. 7).

As noted above, the ALJ's adverse credibility determination as to daily activities appears to be based solely on transferability to a work setting because the ALJ does not discuss any of Plaintiff's testimony in relation to the listed activities. However, the Court briefly considers the issue. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Id.* (citing *Orn*, 495 F.3d at 639 and *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004). However, when the daily activities described do not contradict the claimant's testimony they cannot serve as a basis for an adverse credibility determination. *Id*.

Plaintiff did not testify at the hearing as to most of the activities identified, and the decision cites only Plaintiff's *Adult Function Report* and Plaintiff's wife's *Third Party Function Report* in support of the list of Plaintiff's activities of daily living that "diminish[] the credibility of [Plaintiff's] allegations of functional limitations."[6]  (AR 44 (citing Ex. B5E pp. 2-3 & B4E, p.5).[7])  As noted above, the activities actually described are very limited, and the ALJ does not explain how Plaintiff's ability to engage in these limited activities contradict his testimony as to his symptoms.  The absence of any explanation is particularly problematic here because, as detailed above, with the exception of personal hygiene, the activities Plaintiff describes are not daily or, as to

---

[6] The Court notes that the ALJ does not identify which "allegations of functional limitations" by Plaintiff he is finding not credible based on these daily activities.  Even if the Court accepted the ALJ's mischaracterization of the daily activities, the ALJ fails to identify what testimony by Plaintiff those activities contradict.  The decision does not provide anything more than the summary that follows, indicating that Plaintiff's testimony is "not credible to the extent [it is] inconsistent with the" RFC.  (AR 44.)
[7] The decision also discusses Plaintiff's daily activities in analyzing whether Plaintiff meets a listing and also relies on Plaintiff's *Adult Function Report*.  (AR 41.)  It additionally cites "Testimony," although as noted above, there is very little testimony on the activities listed by the ALJ.

some, even weekly activities. Although the Court must uphold and ALJ's "findings if they are supported by inferences reasonably drawn from the record," *Molina*, 674 F.3d at 1111, the ALJ has failed to explain how the Plaintiff's actual daily activities, or even the general activities listed, contradict Plaintiff's testimony concerning his limitations. *See Garrison*, 759 F.3d at 1016 (criticizing ALJ decision for mischaracterizing the claimant's daily activities by not acknowledging limitations in the claimant's ability to do those tasks); *see also Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints.").

The ALJ failed to provide clear, convincing, and specific reasons to discredit Plaintiffs symptom testimony based on daily activities.

### 3. Conservative Treatment

The ALJ found:

> Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature, primarily in the form of medications. The lack of more aggressive treatment, such as surgical intervention or inpatient mental health treatment suggests the claimant's symptoms and limitations were not as severe as he alleged.

The Ninth Circuit has held "that evidence of conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F.3d at 751 (finding treatment with over-the-counter pain medication sufficient to discount a claimant's testimony regarding the severity of the impairment). The ALJ can also infer that a claimant's pain is "not as all-disabling as . . . reported" when the claimant does not seek more aggressive treatment. *Tommasetti*, 533 F.3d at 1039-40 (finding a claimant's favorable response to conservative treatment (physical therapy, use of anti-inflammatory medication, use of a Transcutaneous Electrical Nerve Stimulation (TENS) unit and lumbosacral corset) undermined his "reports regarding the disabling nature of his pain."). However, "[a] claimant cannot be discredited for failing to pursue non-conservative

treatment options where none exists." *LaPeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (finding "the record does not reflect that more aggressive treatment options are appropriate or available"). Conservative treatment "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)).

Plaintiff asserts symptoms resulting from both underlying physical and mental health impairments. Although they appear to be combined in the ALJ's credibility assessment, the Court addresses them separately.

### a) Conservative Treatment for Back Pain

Plaintiff argues that the ALJ erred in finding narcotics and injections constituted conservative treatment. (Mot. at 9-10.) The Motion asserts that Plaintiff "had surgery[8] and epidurals without relief and ingests potent narcotic pain medications" to argue his treatment was not conservative. (Mot. at 9 (citing AR 431, 276, 285, 597).) As to the use of narcotics, the Motion does not identify what "potent narcotic pain medications" Plaintiff was taking, however, the Motion cites two medication lists in the record, (AR 431, 597), that indicate Plaintiff was taking hydrocodone and codeine. (*Id.*) Additionally, there are also records indicating Plaintiff was at times taking oxycodone and Percocet, and the ALJ decision accurately acknowledged in summarizing the medical evidence that Plaintiff indicated that

---

[8] He also argues "[t]he fact that Mr. Duarte underwent epidural injection therapy and *surgery* demonstrates attempts at invasive care." (Mot. at 9 (emphasis added).) The Court rejects Plaintiff's claim that he had surgery for his back pain. The Motion identifies no record indicating Plaintiff ever had surgery for his claimed symptoms. None of the pages cited in the Motion support the claim he had surgery. (Mot. at 9 (citing AR 431, 276, 285, 597).) The only records the Court could locate indicating any surgery at all were references to an appendectomy, possibly in 1985 or 1986. (AR 287, 431, 543.) Additionally, a medical summary dated October 17, 2012 (less than a month before Plaintiff's hearing before the ALJ), indicates his only surgery was an appendectomy. (AR 543.)

Percocet worked better for pain than prior medications. (AR 46, 514, 516, 523.) As to the epidural injections, Plaintiff cites a procedure performed in 2002, (Mot. at 9 (citing AR 276)), however, the record reflects, and the ALJ accurately notes, that Plaintiff underwent epidural steroid injections in June 2012. (AR 46, 505.) Defendant responds that the ALJ reasonably found Plaintiff's treatment was conservative and did not reflect disabling limitations.

Plaintiff's treatment for his back pain was not conservative in nature. Plaintiff was taking narcotics, as opposed to over-the-counter medication, and Plaintiff additionally received steroid epidural injections in 2012 for his pain. The Ninth Circuit has noted, "we doubt that epidural steroid shots to the neck and lower back qualify as 'conservative treatment.'" *Garrison*, 759 F.3d 995, 1015 n.20. As a review of the cases cited by the parties, and summarized here, reflects, while some courts may consider the use of medications, TENS, and physical therapy conservative, many others consider the use of narcotics and injections not conservative in nature. Plaintiff cites district court decisions finding narcotics and injections for pain management are not conservative treatment. *Oldham v. Astrue*, No. CV 09-1431-JEM, 2010 WL 2850770, at *9 (C.D. Cal. July 19, 2010) (finding "several instances of lumbar epidural steroid injections, . . . the length of the record over time, the intensity of certain procedures, and the evidence of numerous medications that Plaintiff took to alleviate pain render any argument that Plaintiff's treatment was 'conservative' unconvincing"); *Yang v. Barnhart*, No. ED CV 04-958-PJW, 2006 WL 3694857, at *4 (C.D. Cal. Dec. 12, 2006) (finding treatment "with several potent drugs, . . . physical therapy, and epidural injections," and surgery "that may not have been related to back pain" were not conservative treatment); *Nevins v. Astrue*, No. CV 11-0828 JPR, 2011 WL 6103057, at *5 (C.D. Cal. Dec. 8, 2011) (finding error in conservative treatment analysis when plaintiff was taking numerous pain medications, including Dilaudid and Percocet, had shoulder surgery, received multiple steroid injections, had six months of physical therapy, and the ALJ failed to identify what more would have been expected as to Plaintiff's symptoms); *see also Tunstell v. Astrue*, No. CV 11-9462-SP, 2012

15

WL 3765139, at *4 (C.D. Cal. Aug. 30, 2012) (finding ALJ erred in credibility determination based on lack of use of narcotic pain medication when plaintiff actually did, but discontinued them because they did not work). Defendant cites numerous unpublished Ninth Circuit decisions, although it is not clear from those brief dispositions whether the medications at issue were narcotics or over-the-counter medications. *Hanes v. Colvin*, 651 Fed. Appx. 703, at *705 (9th Cir. June 10, 2016) ("ALJ supported his conclusion with evidence of Hane's conservative treatment plan, which consisted primarily of minimal medication, limited injections, physical therapy, and gentle exercise"); *Edington v. Colvin*, 625 Fed. Appx 334, *336 (9th Cir. Sept. 1, 2015) (finding treatment "with medications and an electronic transcutaneous electrical nerve stimulator unit" conservative treatment).

Plaintiff's ongoing treatment of pain with a variety of narcotics and his eventual treatment with epidural injections does not reflect conservative treatment. Additionally, as noted below, the ALJ failed to identify what more aggressive treatment, available to Plaintiff, he should have pursued.

### b) More Aggressive Treatment for Back Pain

The ALJ discredited Plaintiff for failing to pursue more aggressive treatment than medications (hydrocodone, Percocet, and codeine) when there was, at a minimum, a reason he did not. The only more aggressive treatment the ALJ identifies is surgical intervention. However, a psychological evaluation of Plaintiff indicates "[a]t this time the patient is not a suitable candidate for invasive interventional treatment such as surgery based on a psychological condition due to clinical depression [and] severe anxiety." (AR 481.) This was also noted during the hearing before the ALJ. (AR 68-69.) The ALJ decision cites other portions of this evaluation in summarizing Plaintiff's medical records, but does not acknowledge this reason for Plaintiff not to pursue the only more aggressive treatment identified, surgery. It is possible there are reasons other than the psychological evaluation that Plaintiff did not have surgery, but the ALJ does not discuss that possibility or explain why Plaintiff should have had surgery despite this evaluation indicating he should not. The ALJ erred because Plaintiff had a good reason not to seek more aggressive treatment and

discrediting him on this basis was improper. *Carmickle*, 533 F.3d at 1162 ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment.").

### c) Conservative Mental Health Treatment

As to Plaintiff's mental health treatment being conservative, Defendant notes that Plaintiff did not specifically challenge the ALJ's finding that Plaintiff's mental health treatment was conservative based on a lack of inpatient mental health treatment. (Opp'n at 6). However, Plaintiff does generally challenge the conservative treatment credibility finding. (Mot. at 9)

Discrediting a Plaintiff for not receiving inpatient mental health treatment is a position some district courts have rejected or found questionable. *Mason v. Colvin*, No. 1:12-cv-00584 GSA, 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013) (antidepressants and antipsychotic medications not conservative treatment); *Odisian v. Colvin*, No. CV 12-9521-SP, 2013 WL 5272996, at *8 (C.D. Cal. Sept. 18, 2013) (treatment with psychiatric medications and sessions with a psychologist not conservative treatment); *Matthew v. Astrue*, No. EDCV 11-01075-JEM, 2012 WL 1144423, at *9 (C.D. Cal. April 4, 2012) ("Claimant does not have to undergo inpatient hospitalization to be disabled"). Additionally, in general, finding a claimant's testimony not credible for failing to pursue mental health treatment raises concerns. *Regennitter*, 166 F.3d at 1299-1300 ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment from exercise of poor judgment in seeking rehabilitation.")).

The ALJ's cursory statement finding Plaintiff's allegations not credible based on the combination of conservative treatment for physical and mental limitations does not consider why Plaintiff may not have sought or pursued more intensive mental health treatment or any of the concerns specific to mental health treatment noted in the cases

above. Additionally, the ALJ's credibility finding based on lack of inpatient mental health treatment fails to explain what "symptoms and limitations" he is finding "not as severe as alleged" based on the lack of inpatient mental health treatment. (AR 44.) *Burrell*, 775 F.3d at 1138 ("[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") The absence of explanation which symptoms or limitations are at issue and what undermines them is particularly problematic because the ALJ's more general rejection of Plaintiff's testimony is stated entirely in terms of inconsistency with the RFC without identifying the inconsistencies.

The ALJ failed to provide clear, convincing, and specific reasons to discredit Plaintiff's symptom testimony based on conservative treatment.

### 4. Failure to Comply with Mental Health Treatment

Plaintiff challenges the ALJ's adverse credibility finding based on Plaintiff failing to take his prescribed psychotropic medications. (Mot. at 10-11.) The ALJ found:

> [T]he treatment records show the claimant failed to follow treatment recommendations, such as seeking treatment from a neurologist[9] or taking prescribed psychotropic medications. (Exs. B8F, p. 9 & B25F, pp. 11, 18). The claimant's failure to take his prescribed medications

---

[9] The medical records cited by the ALJ indicate that there was a recommendation for a neurology workup. (AR 515, 522.) One of the same medical records cited by the ALJ, although on a different page, indicates "He has not had the neurology workup as I recommended. Apparently, his adjuster is looking for a neurologist." It would appear that Plaintiff did not have the neurological evaluation, at least at the time the ALJ is faulting him for it, based on lack of access to a provider, potentially related to insurance. (*see also* AR 77 (Plaintiff testifying about lack of insurance). If this was the case, the ALJ should not have discredited him on this basis. *See Orn*, 495 F.3d at 638. Additionally, even assuming Plaintiff could have pursued treatment from a neurologist, the ALJ's finding is vague as to what "symptoms are not as severe as he purports" based on not pursuing treatment from a neurologist. (AR 44.) The ALJs finding on this issue is not sufficiently specific for the Court to find the ALJ rejected Plaintiff's testimony on permissible grounds. *Rollins*, 261 F.3d at 856–57 (The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [the] claimant's testimony."). )

18

> is particularly troubling, since the claimant admitted that these medications helped alleviate his mental health symptoms. (Ex. B9F, pp12, 15, 21, 25). This demonstrates a possible unwillingness to do what is necessary to improve his condition. It may also be an indication that his symptoms are not as severe as he purports.

(AR 44.)

"[A]n unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" may discredit a claimant's claim. *Fair*, 885 F.3d at 603; *see also Orn*, 495 F.3d at 638 (finding a failure to comply with a prescribed course of treatment may be "probative of credibility because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief.")

Here, the ALJ relied on an emergency department medical record to assert that Plaintiff failed to take prescribed psychotropic medication. (AR 44 (citing B8F p.9)[10].) It is dated August 16, 2010 and appears to state that Plaintiff was complaining of anxiety since the morning, was seen in the emergency department the night before for the same complaint, and did not fill or take the medication that was prescribed the night before. (AR 365.) The record from the emergency department the night before reflects Plaintiff was seen for anxiety the night before and prescribed Ativan. (AR 376.) This was not an appropriate basis to find Plaintiff unwilling to do what was necessary to improve his condition or that his symptoms were not as severe as claimed, particularly when a cursory review of the record reflects that Plaintiff was following a prescribed course of treatment with regard to his medications. (AR 408, 410, 414, 420, 483, 494.) The ALJ found Plaintiff not credible for failing to follow prescribed treatment based on one medical record indicating he did not take a prescribed medication one night. This is not a clear, convincing, and specific reasons to discredit Plaintiff's symptom testimony.

_____

[10] The other pages cited concern a recommendation to see a neurologist. (*See supra* at 18 n. 9.)

## 5.    Objective Medical Evidence

As to Plaintiff's credibility based on the objective medical evidence, the ALJ found "[t]he credibility of the claimant's allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective medical evidence of record."[11]  (AR 44.)

Plaintiff argues that once a severe impairment likely to produce subjective limitations is established at step one of the credibility analysis, as here, the ALJ's credibility finding must be based on something other than the objective medical evidence. (Mot. at 7-8.)  Defendant argues the ALJ reasonably found the objective medical evidence did not support the extent of Plaintiff's alleged limitations.  (Opp'n. at 8.) Because the Court finds the ALJ failed to provide specific, clear, and convincing reasons for discrediting Plaintiff's claims as to the severity of his symptoms based on the objective medical evidence, the Court need not consider whether the ALJ relied solely on the objective medical evidence.[12]

As explained above, when discrediting a claimant testimony regarding the severity of symptoms, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.  "General

---

[11] Plaintiff's Motion misquotes the ALJ decision.  (Mot. at 7 citing AR 656 when the Administrative Record only goes to page 602.)  However, the Court located the ALJ's credibility finding as to the objective medical evidence within his credibility analysis. (AR 44.)

[12] The ALJ's consideration of the objective medical to discredit Plaintiff would not be improper if there were other reasons as well.  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857.  As noted above, the ALJ may consider a variety of factors, including,  reputation for truthfulness, inconsistencies in claimant testimony or between testimony and her conduct, daily activities, work records, and testimony from physicians and third parties concerning the nature, severity and effect of the claimant's condition. *Light*, 119 F.3d at 792; *Thomas*, 278 F.3d at 958-59; *Moncada*, 60 F.3d at 524 (quoting *Orteza*, 50 F.3d at 749-50; 20 C.F.R. § 404.1529(c).

findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722.

Here, the ALJ has not "identif[ied] what testimony is not credible and what evidence undermines the claimant's complaints." *Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints."). Following the ALJ's credibility assessment, the decision summarizes the medical evidence, his interpretation of it, and discusses why the ALJ gives greater and less weight to certain opinions in arriving at his RFC. (AR 45-47). There is a summary of Plaintiff's testimony in the decision, however, the decision does not explain which portion of it the ALJ is finding not credible or what objective medical evidence that conclusion is based on.

The Court cannot assess whether the evidence the ALJ relied on undermines the Plaintiff's testimony without knowing which testimony is being found not credible and what that finding is based on. *Brown-Hunter v. Colvin*, 806 F.3d at 492; *see also Treichler*, 775 F.3d at 1103 ("The ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints."). Nor can the Court speculate as to what portions of Plaintiff's testimony are being rejected and on what basis. *Bunnell*, 947 F.2d at 346 ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain."); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1104 (9th Cir. 2014) ("An ALJ's vague allegation that claimant's testimony is not consistent with the objective medical evidence without any specific finding in support of that conclusion is insufficient for our review.").

Since the ALJ's credibility analysis fails to identify what part of Plaintiff's testimony the ALJ finds not credible and what objective medical evidence undermines that that testimony, the ALJ has failed to provide specific, clear, and convincing reasons for discrediting Plaintiff's claims as to the severity of his symptoms.

### 6. Conclusion

The ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony based on his daily activities, conservative treatment, failure to comply with treatment recommendations, or the objective medical evidence. Therefore, there is a lack of substantial evidence supporting the ALJ's rejection of Plaintiff's testimony. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (When "vast majority of ALJ's bases for rejecting [claimant's] testimony were legally and factually erroneous," remaining reason did "not constitute substantial evidence supporting finding that [claimant's] symptoms were not as severe as she testified.")

The Court cannot find the above errors harmless because they are the entirety of the ALJ's credibility assessment. *Carmickle*, 533 F.3d 1155 at 1162 (An ALJ's reliance on erroneous reasons is harmless so long as the "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence"). When "the ALJ fails to articulate an acceptable reason for either disbelieving [the claimant's] testimony in general or for discrediting his pain testimony specifically, [the] case must be remanded to the ALJ to make adequate findings. *Light*, 119 F.3d at 793.

## V. Remand

The Court recommends the matter be remanded to the agency for further administrative proceedings. "The rare circumstances that result in a direct award of benefits are not present in this case." *Leon v. Berryhill*, No. 15-15277, 2017 WL 7051119, at *4 (9th Cir. Nov. 7, 2017, amended Jan. 25, 2018). "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Id.* at *2 (citing *Treichler*, 775 F.3d at 1099). The credit-as-true analysis "permits, but does not require, a direct award of benefits on review but only where the [ALJ] has not provided sufficient reasoning for rejecting testimony and there are no outstanding issues on which further proceedings in the administrative court would be useful." *Leon*, 2017 WL 7051119, at *1. Under the three part rule, the Court first considers "whether the 'ALJ failed to

provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* at *3 (quoting *Garrison*, 759 F.3d at 1019). This step is met for the reasons set forth above.

However, at the second step, the Court considers "whether there are 'outstanding issues that must be resolved before a disability determination can be made' and whether further administrative proceedings would be useful.'" *Id.* (quoting *Treichler*, 775 F.3d at 1101). "In evaluating this issue, [the Court] consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler*, 775 F3d at 1104-05. "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105. When, as here, the ALJ's findings regarding the claimant's subjective symptom testimony are inadequate, remand for further findings on credibility is appropriate. *See Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995). As noted above in discussing the boilerplate language, the ALJ generally rejects Plaintiff's testimony to the extent inconsistent with the RFC without even identifying the inconsistencies. In this respect, the testimony being rejected is an unknown. In addition to not "stat[ing] which symptom testimony is not credible, the decision also fails to identify "what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. Under these circumstances, the Court finds further administrative proceedings are necessary and recommends the case be remanded.

## CONCLUSION

Based on the above reasoning, the undersigned Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment (ECF No. 15) be **GRANTED**, that Defendant's cross-motion for summary judgment (ECF No. 17) be **DENIED**, and that the case be **REMANDED** to the agency for further proceedings.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(1). ///

**IT IS ORDERED** that no later than **February 22, 2018**, any party to this action may file written objections with the Court and serve a copy to all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 1, 2018**.

Dated: February 8, 2018

Hon. Bernard G. Skomal
United States Magistrate Judge

16CV2654 W (BGS)